**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| MILDRED FELICIANO, | ) | CASE NO. 1:20-CV-00753-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Mildred Feliciano ("Feliciano" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On August 17, 2016, Claimant filed an application for DIB, alleging a disability onset date of June 10, 2016. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  (ECF No. 15, PageID #: 204). On November 15, 2018, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 15, PageID #: 106-148).  On February 22, 2019, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 15, PageID

1

#: 86). The ALJ's decision became final on February 12, 2020, when the Appeals Council declined

further review. (ECF No. 15, PageID #: 72).

On April 7, 2020, Claimant filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 17, 20, 21).

Claimant asserts the following assignments of error:

1. The ALJ committed harmful error when he failed to properly evaluate the totality of the

   evidence in the record and when he failed to include all Plaintiff's impairments and their

   effects in his RFC.

2. The ALJ committed harmful error when he failed to properly evaluation Plaintiff's

   credibility.

(ECF No. 17 at 1).

## III. Background

### A. Relevant Hearing Testimony

#### 1. Claimant's Statements and Hearing Testimony

On January 21, 2017, Claimant submitted a supplemental pain questionnaire for the

Agency. (ECF No. 15, PageID #: 268-270). On November 18, 2016, Claimant testified before the

ALJ. The ALJ summarized Claimant's statements as follows:

> In the claimant's initial disability report, completed on her behalf,
> the claimant alleged she was unable to work due to diabetes mellitus,
> internal shingles, stroke, hypertension, and problems with hands
> (3E/2). The claimant reported experiencing pain 4 or 5 times a week.
> She reported that her medications make her sleepy and upset her
> stomach. She reported that sometimes her pain is so bad that she is
> not able to clean, do laundry, or go shopping. She also reported
> difficulty sleeping due to pain. She reported that sometimes sitting,
> standing, and walking are difficulty due to pain (9E). At her hearing,
> the claimant testified that that she is unable to work due to severe
> pain and difficulty sleeping at night. She also testified that she has
> difficulty concentration and her hands lock up, making it difficult to

work. The claimant testified that she has shingles flares that cause pain. The claimant testified that she has depression, but that she is not sure that impacts her ability to work. The claimant testified that she gets four hours of interrupted sleep every night, causing her to be tired during the day. The claimant estimated that she has approximately three days of intolerable pain a week. The claimant testified that she is unable to type at all (Hearing Testimony).

In terms of activities of daily living, the claimant reported to a consultative examination in February of 2017 that she could drive, bathe, dress, make meals, and do housework independently. She reported she no longer crochets (12F). At her hearing, the claimant testified that she goes to Florida every winter with her husband due to his job. She testified that at times she is able to do chores and cook, but other days she is not able to do these things due to her pain. (Hearing Testimony).

(ECF No. 15, PageID #: 95).

## 2. Function Report

On February 27, 2018, Claimant's sister-in-law completed a function report. (ECF No. 15,

PageID #: 360-368). The ALJ summarized the report as follows:

Finally, the claimant's sister in law, Mildred Feliciano, provided a Third Party Function Report, in which she reported that the claimant has difficulty with [ ] lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and using her hands. She noted that the claimant[] could only lift approximately 10 pounds and walk several blocks. She reported that the claimant enjoys reading, television, visiting her grandchildren, crocheting, and gardening. She reported that the claimant could do laundry, cleaning, and cooking, but noted that she needs to lift limited weight and that household chores take her hours to complete (14E). The claimant's sister in law does not qualify as an "acceptable medical source" and cannot establish the existence of medically determinable impairments. However, she does qualify as an "other source." The undersigned may use statements from "other sources" as evidence of the severity of the claimant's impairments and how they affect her ability to function (20 CFR 404.1502 and 404.1513). Ms. Feliciano statements regarding the claimant's physical limitations are not supported by the objective medical evidence which show largely unremarkable physical examination findings. The undersigned has considered Ms. Feliciano's observations, but gives them little weight.

3

(ECF No. 15, PageID #: 97-98).

### 3. Vocational Expert

A vocational expert testified at the hearing. The ALJ asked the vocational expert to

> assume that the individual could perform work at the light exertional
> level. That person – let me look at one thing here, please. In this
> hypothetical, that person could frequently climb ramps and stairs.
> That person could not climb ladders, ropes or scaffolds. That person
> could frequently stoop or crouch and could only occasionally kneel
> or crawl. Handling and fingering are limited to frequent bilaterally.
> Bilateral upper extremity reaching is limited to occasional and
> frequent at bench level, in front.

(ECF No. 15, PageID #: 142). The vocational expert opined that such an individual could do

Claimant's past work as an instructor and receptionist but not as a hairstylist. (ECF No. 15, PageID

#: 143). The ALJ and Claimant's counsel asked a number of additional hypotheticals, none of

which were found to more adequately reflect Claimant's RFC. Based on the vocational expert's

testimony, the ALJ stated:

> In comparing the claimant's residual functional capacity with the
> physical and mental demands of this work, the undersigned finds
> that the claimant is able to perform it is actually and generally
> performed [sic]. The undersigned asked the vocational expert if a
> hypothetical individual with the claimant's age, education, work
> experience, and residual functional capacity would be able to
> perform the claimant's past relevant. The vocational expert replied
> that such a hypothetical individual would be able to perform this
> work, as both actually and generally performed.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the
> vocational expert's testimony is consistent with the information
> contained in the Dictionary of Occupational Titles. To the extent
> that the vocational expert's testimony differed from the DOT, it is
> based on her professional experience. Given that the claimant's
> performed this work at the sedentary exertional level, and  the
> residual functional capacity provides for a reduced sedentary
> exertional level, the undersigned  finds the claimant is able to
> perform her past relevant work Given that the claimant[] performed
> this work at the light exertional level, and the residual functional

capacity provides for a   reduced light exertional level, the undersigned finds the claimant is able to perform her past  relevant work.

(ECF No. 15, PageID #: 99).

### B.  Relevant Medical Evidence[1]

Claimant's medical treatment for physical impairments is summarized as follows:

| Date of Treatment | Notes | Transcript Page |
|---|---|---|
| 5/13/2015 | An MRI of Claimant's thoracic spine revealed small midline herniation at T7/8 without cord compression and mild disc bulging at T8/9. | 476 |
| 10/21/2015 | Claimant was determined to be an appropriate candidate for a spinal cord stimulator to reduce her pain. | 1516-1517 |
| 4/8/2016 | Claimant complained of dizziness and blurry vision along with confusion. | 333-334 |
| 4/8/2016-4/11/2016 | Claimant sought treatment for TIA, diabetes, leukocytosis, elevated lactate, hypertension, change mental status with confusion, bilateral hands numbness due to carpal tunnel syndrome, and carotid artery stenosis. | 341-343 |
| 5/6/2016 | An MRI of her brain indicated problems with her arteries. | 372-374 |
| 5/6/2016 | Claimant underwent surgery for a superficial ulceration of the left internal carotid artery with no significant stenosis. | 383-384 |
| 5/6/2016 | Testing demonstrated that she had an acute non-hemorrhagic (no bleeding) infarction involving a portion of the right frontal lobe of the brain in addition to additional punctate acute non-hemorrhagic infarcts in the same location. | 372 |
| 5/9/2016 | Physician noted that Claimant's visual symptoms "improved a lot" and that she should "recover well"; Claimant exhibited normal mental status, normal gait, full 5/5 strength, and intact sensation, reflexes, and coordination; Claimant was advised to control her diabetes and diet and then exercise at least three times per week. | 351-356 |

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

| 5/15/2016 | Claimant was seen at her primary care doctor, Neighborhood Family Practice, for shingles and her continuing post herpetic neuralgia. | 396-537 |
|---|---|---|
| 5/27/2016 | Claimant noted to have uncontrolled type 2 diabetes, chronic pain syndrome, post herpetic neuralgia, carotid occlusion on the left, cerebrovascular accident, and right-hand pain. | 632 |
| 5/27/2016 | Claimant had regained function after her CVA except for right vision changes, including light sensitivity. | 633 |
| 5/27/2016 | Claimant visited one of her primary care providers, Heidi Gullett, M.D., regarding her diabetes. Claimant reported to Dr. Gullett that she had regained function "completely" (aside from changes in her right eye vision) after her stroke. Dr. Gullett noted that Claimant was in no distress and had normal mood, affect, behavior, judgment, and thought content. Claimant also exhibited no cardiovascular, musculoskeletal, or neurological abnormalities. | 421-425 |
| 6/2/2015-7/13/2016 | Claimant treated at Cleveland Clinic for lumbar and thoracic epidural steroid injections along with the pain related to her post-herpetic neuralgia; X-rays of hands were normal. | 542-612 |
| 7/13/2016 | Claimant treated at Cleveland Clinic Pain Management Department for a follow-up appointment for her post herpetic neuralgia, bilateral hand pain; she denied experiencing depression, mood disorder, and recent psychological; Claimant displayed decreased grip strength but did not have any significant abnormalities in her gait, coordination, reflexes, range of motion, mental status, cardiovascular functioning, or strength in her other joints and extremities; Claimant did not have any significant swelling or deformities in her joints and extremities. | 591-595 |
| 8/17/2016 | Claimant underwent pain management for the neuralgia and was using fentanyl patches to control the pain related to the post herpetic neuralgia. | 407 |
| 9/2016-9/2017 | Claimant again displayed normal mood, affect, behavior, judgment and thought content and had no evidence of cardiovascular, musculoskeletal, or neurological abnormalities. Claimant on occasion complained of depression and anxiety related to her physical impairments, but she generally denied experiencing any significant psychiatric symptoms at these treatment visits. Dr. Gullett advised Claimant to engage in regular exercise and a modified diet. | 1401, 1404, 1405, 1409, 1410, 1416, 1418, 1422, 1427-28 |

6

| 9/23/2016 | Claimant complained of pain related to her post herpetic neuralgia along with persistent hand pain. | 824 |
|---|---|---|
| 9/29/2016 | Attended physical therapy for hand pain (2 of 8 scheduled. No further attended). Reported increased range of motion in her hands. Discharged for noncompliance. | 1321-22, 1325, 1346 |
| 12/15/2016 | Claimant consulted with Dr. Jerry Drucker regarding her diabetes. Ducker assessed atherosclerotic heart disease with acute myocardial infarction and prior old myocardial infarction, poorly controlled diabetes, diabetic neuropathy, hypertension, history of cerebrovascular accident, and history of shingles. | 650-652 |
| 12/15/2016 | Claimant underwent a cardiac catheterization, which was positive for STEM1, subtotal occlusion of distal RCA, successful PTCA and stenting of distal RCA, successful stenting of proximal RCA, and severe stenosis of the proximal to mid LAD. Two stents were placed in the right coronary artery. She was also found to have left anterior descending disease | 666 |
| 12/15/2016 | Claimant reported feeling "much better" after undergoing stenting, and examinations revealed that she had normal mood, affect, attitude, behavior, speech, eye contact, strength, and range of motion and no musculoskeletal or neurological abnormalities. | 651, 654, 657, 658, 663, 719-720, 724, 734 |
| 12/15/2016 | Claimant met with Jerry Drucker, M.D., regarding her diabetes, and she admitted that she "rarely" monitored her blood sugar levels, "lost interest" in following a diet, and may not be taking her medications as directed. | 650 |
| 12/17/2016 | A CT of Claimant's brain revealed a small remote right occipital lobe infarction. | 693 |
| 1/3/2017 | Claimant complained of low back pain and kidney pain. | 680 |
| 1/13/2017 | Claimant began treating at the Diagnostic Clinic in Florida for her coronary artery disease, shingles, diabetes, insomnia, and mild intermittent asthma. She reported that she had depressive symptoms that were exacerbated by her coronary artery disease | 790-794 |
| 1/24/2017 | Claimant attended cardiac rehabilitation. | 851-856 |
| 2/15/2017 | Claimant attended a follow up with Dr. Sharma regarding her cardiac issues. Claimant reported to be doing very well. | 798 |
| 2/23/2017 | Claimant diagnosed with a left UVJ stone located in the left distal ureter with mild hydronephrosis seen on CT scan. | 867 |
| 6/29/2017 | Claimant complained of chest pain, which resolved with medication. She denied experiencing joint or muscle pain, joint swelling, weakness, impaired vision, sleep | 1374-1378 |

| | | |
|---|---|---|
| | difficulties, depressed mood, and memory loss. Claimant was referred for cardiac catheterization. | |
| 6/30/2017 | Claimant underwent a catheterization angiogram due to a history of unstable angina. | 1993-1996 |
| 7/27/2017 | Claimant presented at the emergency room with complaints of chest pain. | 1999 |
| 8/1/2017 | Claimant underwent a heart catheterization. | 1941-43 |
| 8/1/2017 | Claimant attended a cardiac surgery consult. | 2008-2015 |
| 8/1/2017 | Carotid artery testing was completed and was positive for 40-59% stenosis of the internal right carotid and 60-79% stenosis on the left side. | 1939 |
| 8/4/2017 | Open heart surgery grafting of two vessels performed on Claimant. | 2019-2020 |
| 8/17/2017 | Claimant was discharged home with notes of active problems of paroxysmal atrial fibrillation, unstable angina, atherosclerosis of native coronary artery of native heart, and acute ITP. | 2051-2055 |
| 9/2/2016 | Dr. Gullett "strongly encouraged" Claimant to participate in cardiac rehabilitation immediately, rather than waiting until she returned to Florida (which was Claimant's stated intention). | 1400, 1402, 1411, 1429 |
| 9/3/2017 | Claimant presented at the emergency room for leg swelling and shortness of breath; she was readmitted. | 2056, 2061-2062 |
| 9/20/2017 | Claimant attended a follow up cardiologist appointment. Claimant reported doing well. Physician noted that Claimant denied chest pain, shortness of breath, orthopnea, cough, edema, palpitations, PND, lightheadedness or syncope; was negative for muscle or joint pain, stiffness, joint swelling; negative for depressed mood; and had no cardiovascular, neurological, or musculoskeletal abnormalities. | 1391, 1394, 1395 |
| 6/6/2018 | Claimant saw her ophthalmologist in June 2018 because of blurred vision, decreased vision, and dryness of the eye. A nuclear senile cataract of the right eye was identified. The doctor wrote that they would try new glasses. | 2131, 2135 |
| 6/21/2018 | A follow-up appointment with her cardiologist, Dr. E Dean Nukia, revealed continuing atherosclerosis of native coronary artery, mixed hyperlipidemia, paroxysmal atrial fibrillation, status post two grafts, and history of ischemic right PCA stroke. Claimant denied chest pain, tightness or heaviness. Claimant was negative for muscle or joint pain, stiffness, joint swelling; negative for depressed mood, memory loss; and no cardiovascular, neurological, or musculoskeletal abnormalities | 2144, 2149, 2150 |

| 7/12/2018 | Claimant presented for evaluation of her bilateral hand and wrist pain, positive for mild carpal tunnel. Claimant had full or nearly full strength in her fingers, wrists, and arms and no evidence of significant muscle atrophy. X-rays of Claimant's hands were normal, and electrodiagnostic testing found "mild" carpal tunnel syndrome and no evidence of radiculopathy. | 2114-2115, 2128-2129, 2155-2156 |
|---|---|---|
| 9/25/2018 | Claimant diagnosed with breast cancer with a surgical consult recommending a right lumpectomy with SLNB with possible ALND. Claimant denied a history of psychiatric illness and believed that she was coping well with her diagnosis of cancer. Claimant also denied experiencing joint or muscle pain, swelling, changes in vision, mood disorder, and sleep disturbances. Dr. Grobmyer noted that Claimant walked independently and had no observed limitations in her upper extremity range of motion. | 2231-2239 |
| 10/1/2018 | Claimant underwent surgery to remove cancer in breast. | 2320, 2340-2342 |
| 10/11/2018 | Claimant's treatment provider described her prognosis as "favorable," and she reported "doing well" overall. | 2307 |
| 10/11/2018 | Physician recommended adjuvant radiation therapy and was awaiting oncotype for a decision on systemic therapy. | 2323 |
| 10/12/2018 | A body bone scan was performed with no evidence of osseous metastases. There were degenerative changes consistent with her prior complaints and her age. | 2329-2330 |
| 10/24/2018 | Claimant's treatment provider described her prognosis as "favorable," and she reported "doing well" overall. | 2398 |

Claimant's psychological treatments were as follows:

| Date of Treatment | Notes | Transcript Page |
|---|---|---|
| 8/3/2018 | Claimant presented for an initial evaluation in the General Psychology Department at main campus of the Cleveland Clinic Foundation. She reported feeling depressed with symptoms of poor sleep, poor appetite, low energy, poor concentration, and feelings of depression. Claimant was diagnosed with mood disorder major depressive disorder recurrent moderate and generalized anxiety disorder. Claimant's appearance, behavior, speech and language, orientation, associations, thought content, insight, and judgment were all unremarkable. | 2121-2124, 2161-2163 |
| 8/9/2021 | Claimant reported she does not want to use medication and hopes talk therapy will alleviate her symptoms of anxiety and | 2167-2174 |

| | depression. Claimant reported social anxiety but looks forward to traveling to Florida. Claimant's condition and prognosis were reported as stable. | |
| 9/7/2018 | Claimant underwent a psychological assessment, during which she displayed normal appearance, behavior, speech and language, associations, thought content, insight, and judgment. | 2121-2124 |
| 10/7/2018 | Claimant exhibited normal appearance, behavior, speech and language, associations, thought content, insight, and judgment. Claimant complained of social anxiety, but acknowledged that she still enjoyed going to Florida with her husband. | 2167 |

## C. Opinion Evidence

On November 18, 2016, State Agency reviewing physician Theresa March, D.O. completed a physical residual functional capacity assessment. Dr. March opined that Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an 8-hour work day, and was unlimited in her ability to push and pull. (ECF No. 15, PageID #: 157). Dr. March limited Claimant to frequently climbing ramps/stairs; never climbing ladders/ropes/scaffolds; frequently stooping; occasionally kneeling; frequently crouching; and occasionally crawling. (ECF No. 15, PageID #: 158). Dr. March explained that these limitations were due to Claimant's bilateral hand pain. (ECF No. 15, PageID #: 158). Dr. March also limited Claimant's handling and fingering to frequent due to Claimant's bilateral hand pain with decreased grip strength. (ECF No. 15, PageID #: 158). Dr. March noted that Claimant was being treated with pain management for pain associated with shingles. (ECF No. 15, PageID #: 158). Dr. March opined that Claimant should "avoid unprotected heights and operating heavy machinery due to history of stroke and [bilateral] hand pain." (ECF No. 15, PageID #: 158).

On April 3, 2017, Larry Meade, D.O. completed a reconsideration of Claimant's physical residual functional capacity assessment. Dr. Meade's opinions regarding Claimant's exertional and postural limitations echoed those of Dr. March. (ECF No. 15, PageID #: 184-185). With respect

to Claimant's manipulative limitations, Dr. Meade also limited Claimant to frequent bilateral handling and fingering but included a limitation for occasional overhead and frequent bench level reaching. (ECF No. 15, PageID #: 185-186). Dr. Meade also opined that no environmental limitations were warranted. (ECF No. 15, PageID #: 186).

The ALJ gave the opinions partial weight and explained that

> these consultants did not have opportunity to examine the claimant or review the additional medical evidence received at the hearing level. While their opinion is largely consistent with the medical evidence of record admitted at the hearing level, I find the April 2017 opinion at 5A most  persuasive and agree that the Claimant's stroke symptoms resolved sufficiently within 12 months that the medical evidence does not justify any environmental  restrictions.

(ECF No. 15, PageID #: 97).

On February 16, 2017, Claimant underwent a consultative psychological evaluation by Michael S. Greenberg, Ph.D. (ECF No. 15-1, PageID #: 879-881). Dr. Greenberg observed that: Claimant's mood was depressed; Claimant was able to recall one of three common objects after five minutes; her working memory was borderline range; and her "fund of information was impaired, arithmetic ability was low average, as was her abstract thinking and verbal reasoning." (ECF No. 15-1, PageID #: 880). Dr. Greenberg diagnosed Claimant with major depressive episode, single, moderate. (ECF No. 15-1, PageID #: 880). Dr. Greenberg noted that Claimant "can drive, bathe, dress, make meals and do housework independently." (ECF No. 15-1, PageID #: 881). He opined that Claimant's depression does not appear incapacitating. (ECF No. 15-1, PageID #: 881). (The ALJ did not indicate the weight given to Dr. Greenberg's opinion.)

On February 20, 2017, State Agency reviewing psychologist Thomas L. Clark, Ph.D. reviewed Claimant's records. Dr. Clark opined that Claimant had mild limitations in her ability to understand, remember, or apply information; mild limitation in her ability to concentrate, persist,

11

or maintain pace; no limitation in her ability to interact with others; and no limitation in her ability

to adapt or manage herself. (ECF No. 15, PageID #: 182). Dr. Clark explained:

> [Claimant] did not report mental illness on application. Treatment records indicate she is prescribed a psychotropic Rx for depression, with good control of [symptoms] indicated. At 12/16 contact, she scored 10 on PHQ-9 depression screening (mild to moderate severity). At 1/3/2017 follow-up, her score dropped to zero, indicating full medical remission of mood [symptoms]. 1/25/2017 contact also notes normal mental status with regard to mood and affect as well as attention and concentration. The [history] of mild head injury is noted, but with no compelling evidence of persisting changes in mental status related to this event. She reports more recent [history] of strokes, without evidence of persisting cognitive changes. Restrictions in functioning beyond the mild range are not attributable to mental illness as revealed in the medical evidence in file. Not severe.

(ECF No. 15, PageID #: 183).

The ALJ gave Dr. Clark's opinion great weight and explained that

> State Agency psychology consultants are highly qualified individuals who are considered experts in the evaluation of the psychological issues in disability claims. Although the consultant did not examine the claimant, they [ ] provided specific reasons for their opinion, showing that the opinion was grounded in the evidence in the case record. This opinion is consistent with the claimant's lack of treatment for mental impairments for a majority of the relevant period as well as largely unremarkable mental status examinations.

(ECF No. 15, PageID #: 93).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3.      The claimant has the following severe impairments: cerebrovascular accident, diabetes mellitus, post-herpetic neuralgia, essential hypertension, coronary artery disease, and mild carpal tunnel syndrome (20 CFR 404.1520(c)).

> 5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

perform light work as defined in 20 CFR 404.1567(b). She is able to frequently climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently stoop or crouch, and occasionally kneel or crawl. The claimant is limited to frequent handling and fingering bilateral. Finally, the claimant is limited to occasional bilateral overhead reaching and frequent reaching at the bench level and other planes.

6.      The claimant is capable of performing past relevant work as a Receptionist and Training Instructor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.  Discussion

Claimant raises two assignments of error on appeal. Within the first assignment of error, Claimant raises several issues: whether the ALJ erred by finding Claimant's unspecified arthropathies, cataracts, transient insomnia, obesity, breast cancer, depression, and anxiety were not severe impairments; whether the ALJ properly considered the combination of Claimant's impairments; whether the ALJ erred by not limiting Claimant to only occasional handling and fingering; whether the ALJ erred by not including a limitation regarding Claimant's attendance at

14

work. Claimant's second assignment of error is framed as a challenge to the ALJ's credibility finding as to Claimant's pain symptoms as a disabling impairment.

### 1. First Assignment of Error

#### a. Severity of Impairments

Claimant argues that the ALJ erred by failing to list arthropathies, cataracts, transient insomnia, obesity, breast cancer, depression, and anxiety as severe impairments. "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).

The ALJ found that Claimant suffered numerous severe impairments: "cerebrovascular accident, diabetes mellitus, post-herpetic neuralgia, essential hypertension, coronary artery disease, and mild carpal tunnel syndrome" (ECF No. 15, PageID #: 91). Therefore, Claimant "cleared step two of the analysis." *Anthony,* 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). The ALJ, therefore, did not commit reversible err. *Id.* Even if the ALJ erred by failing to list arthropathies, cataracts, transient insomnia, obesity, breast cancer, depressive disorder and anxiety as severe impairments, as

15

discussed below he considered each of Claimant's impairments in the remainder of the decision and when determining the RFC; thus, any error is harmless.

> b. **The ALJ considered the combined effect of Claimant's severe and non-severe impairments and their effect on her work attendance and ability to do more than occasional handling, fingering and reaching.**

A claimant's RFC is the most she can do despite the physical and mental limitations resulting from her impairments. *See* 20 C.F.R. § 404.1545(a). The ALJ, rather than a physician, bears the responsibility for determining the RFC. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009). In carrying out this responsibility, the ALJ makes the ultimate finding regarding an individual's ability to perform work-related activities based upon "consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." Social Securing Ruling (SSR) 96–5p, 1996 WL 374183 at *5 (July 2, 1996); *see also Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). Although the ALJ may not substitute his opinion for that of a physician, "an ALJ does not improperly assume the role of a medical expert" by assessing the various evidence before rendering the RFC finding. *See Poe*, 342 F. App'x at 156-57.

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's

16

assessment of residual functional capacity reflects a claimant's functional capacity in light of all

his limitations, not just those that are severe.")).  The ALJ must do so because

> [w]hile a 'not severe' impairment(s) standing alone may not
> significantly limit an individual's ability to do basic work activities,
> it may—when considered with limitations or restrictions due to
> other impairments—be critical to the outcome of a claim. For
> example, in combination with limitations imposed by an
> individual's other impairments, the limitations due to such a 'not
> severe' impairment may prevent an individual from performing past
> relevant work or may narrow the range of other work that the
> individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015)

(citations omitted).  Said differently, "'an ALJ's conclusion that an impairment is non-severe is

not tantamount to a conclusion that the same impairment . . . does not impose any work-related

restrictions.'" *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

Accordingly, "[i[n assessing RFC, the [ALJ] must consider limitations and restrictions imposed

by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 61 Fed. Reg.

at 34477.

The ALJ in this case properly considered Claimant's impairments, both severe and non-

severe, when determining her RFC. The ALJ specifically noted that he was required to consider

all medically-determinable impairments together if he found any one impairment severe. (ECF No.

15, PageID #: 90); *see Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005)

(finding that the ALJ's remark that he was required to consider the combination of all medically

determinable impairments after finding any one impairment severe indicated that the ALJ did not

fail to combine the claimant's impairments). After identifying several of Claimant's impairments

as severe, the ALJ identified other medically determinable impairments and specifically stated that

he considered each of them in crafting Claimant's RFC:

The record contains evidence of additional impairments, including other and unspecified arthropathies, cataracts, transient insomnia, being overweight (6F; 17F; 20F; 23F; 28F). While these impairments are medically determinable, they have not required extensive treatment and the record does not contain significant medical findings showing that these impairments cause more than minimal limitations on the claimant's ability to perform work activities. Additionally, the claimant has been diagnosed with breast cancer. However, the record does not indicate that the claimant's breast cancer has lasted or is expected to last 12 months (30F; 31F). As these impairments do not more than minimally limit the claimant's ability to perform basic work activities, they are not "severe" within the meaning of the regulations (20 CFR 404.1521). However, all of the claimant's medically determinable impairments, both severe and non-severe, have been considered in assessing her residual functional capacity (20 CFR 404.1545(a)(2) and SSR 96-8p).

The claimant's medically determinable mental impairments of major depressive disorder and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

(ECF No. 15, PageID #: 91-92). Additionally, after examining Claimant's mental impairments under the "paragraph B" criteria, the ALJ noted:

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(ECF No. 15, PageID #: 93). Accordingly, the Court's review of the ALJ's decision indicates that the ALJ did not fail to consider the combination of Claimant's medically determinable impairments. *Pasco*, 137 F. App'x at 842

18

Next, Claimant argues that had the ALJ properly considered the severity of Claimant's breast cancer and mental impairments, additional limitations would have been included in her RFC such that she would not have been able to return to her past relevant work. (ECF No. 17 at 19). The Court finds that substantial evidence supports the ALJ's determination not to include additional limitations in the RFC.

In this case, the ALJ found Claimant had physical impairments but no severe mental impairments. The ALJ concluded Claimant's mental impairments were non-severe after determining that she has a mild limitation in understanding, remembering, or applying information; a mild limitation in concentrating, persisting, or maintaining pace; no limitation in interacting with others; and no limitation in adapting or managing herself. (ECF No. 15, PageID #: 92).  The ALJ chose not to adopt mental restrictions in formulating Claimant's RFC because he found the record contained no indication that her mental impairments imposed any functional limitations. If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d). That the ALJ found Claimant had mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC. *See, e.g., Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *5 (S.D. Ohio Aug. 21, 2017) (finding that mild mental impairment does not require inclusion of mental limitations in RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5

19

(S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations).

Additionally, the ALJ supported his determination with the opinion of the State Agency psychological consultant whose opinion he gave great weight. The ALJ explained that: "[The State Agency consultant] opined that the claimant's mental impairments are not severe and cause mild limitation in understanding, remembering, or applying information, no difficulties in interacting with others, mild limitation in concentrating, persisting, or maintaining pace, and no difficulties adapting or managing oneself (5A)." (ECF No. 15, PageID #: 93). The ALJ further stated that there are "no opinions during the relevant period from any treating or examining source physician to support the claimant's allegation that she is disabled." (ECF No. 15, PageID #: 97).

Claimant also states that the matter should be remanded due to the ALJ's decision not to further limit her to only occasional use of her upper extremities and to occasional fingering and handling.[2] The ALJ explained:

> The claimant also has a history of mild carpal tunnel syndrome and post-herpetic neuralgia. X-rays showed well-maintained joint spaces without evidence of acute injury/ fracture or deformity. EMG testing performed in June of 2018 revealed mild bilateral median neuropathy at or distal to the wrists, consistent with carpal tunnel syndrome, but no evidence of cervical motor radiculopathy (24F). These conditions have been treated with medication, injections, and pain management throughout the relevant period (3F; 5F; 9F; 26F; 28F). The claimant attended one session of physical therapy for her hands in August of 2016. In September of 2016, treatment notes show that the claimant's neuropathic pain was stable with pharmacological management (14F). The claimant attended another

---

[2] Claimant also asserts that the ALJ failed to include a limitation regarding her attendance at work. However, Claimant fails to articulate any basis for the limitation and includes only a conclusory statement that the ALJ erred. Accordingly, this argument is waived. *Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) ("issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument).

physical therapy evaluation in September of 2017, but was discharged for failure to return after one visit (l 8F). Physical examinations have generally been unremarkable, but have, at times, revealed mild swelling in the claimant's wrist and slightly reduced strength in the claimant's elbows and fingers (14F; 26F; 28F).

The claimant's overarching allegations of disability are less than fully consistent with the record. The claimant's reported activities of daily living during the relevant period are not consistent with the extreme limitations she has alleged. Additionally, while the record shows a history of multiple physical impairments, as discussed above, the record also indicates that the claimant has generally been responsive to treatment and physical examination findings have not been consistent with the extreme allegations the claimant has alleges. Additionally, the record documents a history of noncompliance with medication and recommended lifestyle changes (3F; 7F; 9F; 15F; 21F; 30F). Finally, the records [sic] contains no opinions during the relevant period from any treating or examining source physician to support the claimant's allegation that she is disabled.

(ECF No. 15, PageID #: 96-97). The ALJ also supported his decision with opinions from the State Agency consultants who opined that Claimant should be limited to frequent handling and fingering, occasional overhead and frequent bilateral reaching. (ECF No. 15, PageID #: 97). Although the State Agency reviewing physicians did not have Claimant's later records to review, the Commissioner correctly points out that Claimant's later-dated records "consistently displayed no significant neurological, musculoskeletal, cardiovascular, or mental status abnormalities, and she repeatedly denied experiencing significant physical and psychiatric symptoms. (Tr. 20, 25-26, 1377-78, 1394-95, 1401, 1404-05, 1410, 2123, 2149-50, 2155, 2162, 2167, 2235-36)". (ECF No. 20 at 16 (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (rejecting the claimant's assertion that the State Agency physicians' opinions were outdated and improperly relied upon where the ALJ considered later medical examinations and changes in the claimant's condition); *see also Mendolera v. Comm'r of Soc. Sec.*, No. 1:18-cv-2604, 2020 WL 57164, *2-3 (N.D. Ohio Jan. 6, 2020) (the ALJ properly excluded mental limitations from the RFC where the

State Agency reviewing psychologists found that the claimant had only mild limitations and treatment notes indicated an absence of depression, memory loss, suicidal ideas, and anxiety))).

Claimant cites to various treatment and diagnosis for her history of TIA/stroke[3], carotid artery problems, coronary artery disease with both stents and grafts, and breast cancer before stating that given these physical ailments, "[i]t is no wonder…that [she] was depressed and had anxiety." (ECF No. 17 at 16). Claimant merely points to evidence in the record to support her view of the case. She does not contest the evidence cited by the ALJ. In other words, Claimant's argument is about the weight of the evidence, not that the ALJ's decision was not supported by substantial evidence. This Court will not engage in reweighing the evidence.

The ALJ properly considered Claimant's severe and non-severe impairments in assessing her RFC and concluded that additional limitations were not warranted. The ALJ explained the basis for this conclusion (ECF No. 15, PageID #: 91-98), which included the function discussion of the "paragraph B" criteria (ECF No. 15, PageID #:91-93), the medical records, and the medical opinions. Although Claimant cites to parts of the record that detract from the ALJ's decision to omit mental limitations from her RFC, including her own statements and medical notations that she implies the ALJ ignored, her arguments are unavailing. First, as discussed above, sufficient evidence supports the ALJ's RFC. Second, the ALJ is not obligated to discuss every piece of information in the record "so long as he [ ] considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence." *Lee v. Berryhill*, Case No. 1:17-cv-1865, 2018 WL 3970553, at *3 (N.D. Ohio Aug. 20, 2018); *Amir v. Comm'r of Soc. Sec.*,

---

[3] "A transient ischemic attack (TIA) occurs when blood flow to a part of the brain stops for a brief time. A person will have stroke-like symptoms for up to 24 hours. In most cases, the symptoms last for 1 to 2 hours. A TIA is a warning sign that a true stroke may happen in the future if something is not done to prevent it." https://medlineplus.gov/ency/article/000730.htm

705 F. App'x 443, 450 (6th Cir. 2017). Third, as detailed below, the ALJ properly considered Claimant's own statements regarding the severity of her symptoms and determined that her statements were not consistent with the record evidence. (ECF No. 15, PageID #: 95-97).

Accordingly, the Court concludes that the ALJ properly considered Claimant's combined impairments in assessing her RFC and that substantial evidence supports the ALJ's decision not to further limit Claimant's abilities.

### c.  Forfeit arguments

Claimant's first assignment of error notes several additional objections but fails to adequately set forth any argument or facts relating to these objections. It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument). As discussed below, Claimant's undeveloped arguments are waived.[4]

### i.  State Agency Medical Opinion

Claimant notes that ALJ gave the "State Agency Reviewing Physicians only partial weight" but is unclear whether the Claimant argues that an error occurred. (ECF No. 17 at 17). Claimant states:

> According to the ALJ, this was because these physicians had not examined Plaintiff and had not examined the medical evidence

---

[4] In addition to the issues listed here, the Commissioner noted a potential argument regarding the ALJ's listing determination. (ECF No. 20 at 18 n. 6 (citing ECF No. 17 at 17)). The Court does not read Claimant's brief as including an argument regarding the listing determination. Nonetheless, this issue is waived. *See Dakroub v. Comm'r of Soc. Sec.*, No. 15-12484, 2016 WL 5539760, at *9. (E.D. Mich. Aug. 1, 2016). ("A claimant's failure to specifically detail, in a point-by-point fashion, how he or she meets a listing waives that argument") (citation omitted), report and recommendation adopted by 2016 WL 5405325 (E.D. MI Sep. 28, 2016)).

> issued after their final review in April 2017 (Id.). What is interesting
> to note is that these reviews were performed by a pulmonologist and
> an ophthalmologist (Tr. 89 and 116). Neither of these physicians
> were neurologists nor cardiologists nor any other specialty relevant
> to this matter. Also, they did not have the opportunity to review the
> extensive medical records documenting Plaintiff's cardiac,
> depression, or breast cancer problems.

(ECF No. 17 at 17-18). Although Claimant notes supposed shortfalls regarding the ALJ's reliance

on the opinions, she fails to assert that these shortfalls result in error or what that error may be.

The Court cannot take such a conclusory and undeveloped assertion and transform it into a

substantive argument on Claimant's behalf without improperly becoming an advocate for

Claimant. "It is not sufficient for a party to mention a possible argument in the most skeletal way,

leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th

Cir. 1997). Accordingly, this argument is waived.

### ii.  ALJ's recitation of medical history

Claimant notes that "the ALJ devoted only a little over three pages in the decision to detail

over two thousand pages of medical records." (ECF No. 17 at 18). Claimant does not cite to any

case law or regulations regarding the drafting requirements for an ALJ nor does she provide any

analysis for how the ALJ's decision is deficient. Accordingly, this issue is waived. *Kennedy*, 87

Fed. Appx. 464, 2003 WL 23140056, at *1.

### iii.  Grid rule

Claimant also notes "that if Plaintiff was unable to perform her past work, based on her

age, Appendix 2 to Subpart P of Part 404, the Medical Vocational Guidelines, Grid Rule 202.06

would provide for a finding of disabled. Based on the Grid Rules, this matter should be remanded."

(ECF No. 17 at 20). Although Claimant asserts that this argument "should be noted" she fails to

set forth any case law or analysis to support why it should be noted. Accordingly, this issue is

waived. *Kennedy*, 87 Fed. Appx. 464, 2003 WL 23140056, at \*1.

### 2. Second Assignment of Error

Claimant argues that "the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Plaintiff's testimony was credible." (ECF No. 17 at 22). Specifically, Claimant argues that the ALJ failed to properly consider the combined effects of Claimant's pain symptoms when determining whether she was precluded from performing her past relevant work.

Prior to determining that Claimant could not perform her past relevant work at step four, the ALJ determined Claimant's RFC. The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> to perform light work as defined in 20 CFR 404.1567(b). She is able to frequently climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently stoop or crouch, and occasionally kneel or crawl. The claimant is limited to frequent handling and fingering bilateral. Finally, the claimant is limited to occasional bilateral overhead reaching and frequent reaching at the bench level and other planes.

(ECF No. 15, Page ID #: 94). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

25

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability")). When making a disability determination, the ALJ considers all the claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a). The ALJ "will consider all of [the claimant's] statements about [the claimant's] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work." *Id*.

However, a claimant's statements regarding "pain or other symptoms will not alone establish that [she is] disabled...." *Walters*, 127 F.3d at 531 (quoting 20 C.F.R. § 404.1529(a)). An ALJ conducts a two-part analysis to evaluate a claimant's subjective statements of pain when the symptoms rather than that underlying condition form the basis of the disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3P, 2017 WL 5180304 at *3-*4. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment [MDI] that could reasonably be expected to produce the claimant's symptoms." *Id*. (citing 20 C.F.R. § 416.929(a)). If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's alleged symptoms "based on a consideration of the entire case record." *Id*.

26

Social Security Regulation 16-3p lists the factors relevant to the ALJ's determination at the second step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3P, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017).

Although an ALJ is not required to explicitly address all these factors, the ALJ should sufficiently articulate specific reasons for the credibility determinations so that the claimant and any subsequent reviewer can "trace the path of the ALJ's reasoning." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant argues that the "cumulative nature of her impairments provided a basis for finding that the pain was caused by her impairments and that the pain could cause the difficulties with using her hand and fatigue as stated in this case." (ECF No. 17 at 23).

The ALJ summarized Claimant's symptoms:

> In the claimant's initial disability report, completed on her behalf,
> the claimant alleged she was unable to work due to diabetes mellitus,
> internal shingles, stroke, hypertension, and problems with hands
> (3E/2). The claimant reported experiencing pain 4 or 5 times a week.
> She reported that her medications make her sleepy and upset her
> stomach. She reported that sometimes her pain is so bad that she is
> not able to clean, do laundry, or go shopping. She also reported
> difficulty sleeping due to pain. She reported that sometimes sitting,
> standing, and walking are difficulty due to pain (9E). At her hearing,
> the claimant testified that that she is unable to work due to severe
> pain and difficulty sleeping at night. She also testified that she has
> difficulty concentration and her hands lock up, making it difficult to
> work. The claimant testified that she has shingles flares that cause
> pain. The claimant testified that she has depression, but that she is
> not sure that impacts her ability to work. The claimant testified that
> she gets four hours of interrupted sleep every night, causing her to
> be tired during the day. The claimant estimated that she has
> approximately three days of intolerable pain a week. The claimant
> testified that she is unable to type at all (Hearing Testimony).
>
> In terms of activities of daily living, the claimant reported to a
> consultative examination in February of 2017 that she could drive,
> bathe, dress, make meals, and do housework independently. She
> reported she no longer crochets (12F). At her hearing, the claimant
> testified that she goes to Florida every winter with her husband due
> to his job. She testified that at times she is able to do chores and
> cook, but other days she is not able to do these things due to her
> pain. (Hearing Testimony).

(ECF No. 15, PageID #: 95). The ALJ explained that "[a]fter careful consideration of the evidence,

the undersigned finds that the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record for the reasons explained in this decision." (ECF

No. 15, PageID #:95-96). The ALJ determined that Claimant's complaints were inconsistent with

the unremarkable objective medical evidence, her treatment history, and her level of daily activity.

(ECF No. 15, PageID #: 92-97). Specifically, the ALJ explained:

The claimant has a history of diabetes mellitus, essential hypertension, a cerebrovascular accident in May of 2016, and coronary artery disease. (1F; 2F; 3F). By the end of May of 2016, the claimant reported that she felt she had regained function except for vision changes after her cerebrovascular accident (3F). The claimant underwent cardiac catheterization in December of 2016. The claimant demonstrated mild ST elevation in inferior leads and severe stenosis of the proximal to mid the left anterior descending coronary artery (7F). A computed tomography (CT) of the claimant's brain performed in December of 2016 revealed a small remote right occipital lobe infarct and no evidence of acute intracranial abnormality.  A CT of the claimant's chest revealed no evidence of pulmonary embolus (8F/14-15).  The claimant underwent stent placement in January of 2017 after reporting to the emergency department with fatigue, dizziness, lightheadedness, neck pain, and lethargy. She underwent cardiac rehab beginning in January of 2017 (10F). The claimant reported to the emergency department again in February of 2017 with dizziness and nausea. An EKG revealed evidence of sinus rhythm old inferior wall myocardial infarction and mild ST elevation. She underwent cardiac catheterization of the right radial artery and was found to have subtotal occlusion of distal right coronary artery (11F). At a follow up the next month, the claimant reported a couple of episodes of chest pressure, but no other symptoms.  A physical examination was unremarkable (13F). The claimant underwent left heart catheterization in June and July of 2017 (23F). The claimant underwent coronary artery bypass grafting in August of 2017 followed by cardiac rehab. Treatment notes show improvement after her surgery although she initially reported some leg pain (20F; 23F).

These conditions have otherwise been treated during the relevant period with medication. Records indicate the claimant's diabetes responded well to medication and lifestyle changes and was controlled while following prescribed treatment (1F; 3F; 20F). However, the records show periodically elevated blood sugar levels and the claimant reported tingling and numbness in her lower extremities. Notes indicate the claimant was often not compliant with medication and recommended diet and lifestyle changes (7F; 15F; 21F; 30F). Diabetic foot examinations have been unremarkable (21F). Physical examinations throughout the relevant period have generally reveled normal neurological, musculoskeletal, and cardiovascular findings (3F; 7F; 14F; 15F; 19F; 21F; 23F; 26F; 32F). Treatment notes from February of 2018 indicate the claimant's coronary artery disease was stabled (21F).

The claimant also has a history of mild carpal tunnel syndrome and

post-herpetic neuralgia. X-rays showed well-maintained joint spaces without evidence of acute injury/fracture or deformity. EMG testing performed in June of 2018 revealed mild bilateral median neuropathy at or distal to the wrists, consistent with carpal tunnel syndrome, but no evidence of cervical motor radiculopathy (24F). These conditions have been treated with medication, injections, and pain management throughout the relevant period (3F; 5F; 9F; 26F; 28F). The claimant attended one session of physical therapy for her hands in August of 2016. In September of 2016, treatment notes show that the claimant's neuropathic pain was stable with pharmacological management (14F). The claimant attended another physical therapy evaluation in September of 2017, but was discharged for failure to return after one visit (l 8F). Physical examinations have generally been unremarkable, but have, at times, revealed mild swelling in the claimant's wrist and slightly reduced strength in the claimant's elbows and fingers (14F; 26F; 28F).

The claimant's overarching allegations of disability are less than fully consistent with the record. The claimant's reported activities of daily living during the relevant period are not consistent with the extreme limitations she has alleged.  Additionally,  while the record shows a  history of multiple physical impairments, as discussed above, the record also indicates that the  claimant has generally been responsive to treatment and physical examination findings have not been  consistent with the extreme allegations the claimant has alleges.    Additionally,  the  record  documents  a  history  of noncompliance with medication and recommended lifestyle changes (3F; 7F; 9F; 15F; 21F; 30F). Finally, the records [sic] contains no opinions during the relevant period from any treating or examining source physician to support the claimant's allegation that she is disabled.

(ECF No. 15, PageID #: 96-97).

The ALJ's decision addresses several of the SSR 16-3p factors including: Claimant's daily activities; medication the Claimant has taken to alleviate pain or other symptoms; other treatments Claimant has received for relief of pain; and Claimant's noncompliance with treatments and recommended lifestyle changes. The ALJ also supported his decision by citing to Claimant's objective medical evidence and treatment history.

Finally, the ALJ's decision is also supported by the opinions of the State Agency reviewing

physicians. Specifically, Dr. March and Dr. Meade concluded that Claimant could perform a range of light work after reviewing treatment records that revealed that she had normal neurological and musculoskeletal functioning. (ECF No. 15, PageID #: 159, 186). Similarly, Dr. Clark concluded that Claimant had no more than mild mental limitations based upon her normal mental status findings and her denials of significant psychiatric symptoms. (ECF No. 15, PageID #: 183). Claimant cites to a variety of her records to establish that they "provided evidence of problems which could cause Plaintiff's disabling pain[.]" (ECF No. 17 at 22). She does not develop this argument beyond mere conclusions. She argues that she "had problems which could cause disabling pain. The cumulative nature of her impairments provided a basis for finding that the pain was caused by her impairments and that the pain could cause the difficulties with using her hand and fatigue as stated in this case." (ECF No. 17 at 23). Claimant again merely points to evidence in the record to support her view of the case. She does not contest the evidence cited by the ALJ. In other words, Claimant's argument is about the weight of the evidence, not that the ALJ's decision was not supported by substantial evidence. If substantial evidence supports the ALJ's decision, the decision must stand even if the evidence could support an opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Her v. Commissioner*, 203 F.3d 388, 389-390 (6th Cir. 1999). The court will not reweigh the evidence.  Claimant fails to establish that the ALJ's decision was not supported by substantial evidence.

Accordingly, substantial evidence supports the ALJ's decision not to further limit the RFC based on Claimant's allegations of pain and the ALJ's explanation satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

31

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.

Dated: 6/28/2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).